## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SUHAIL TAJ,

        *Plaintiff*,

    v.

UNITED STATES DEPARTMENT OF
STATE, *et al.*,

        *Defendants.*

Civil Action No. 22-1087 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Suhail Taj, a lawful permanent resident of the United States, brings this action

under the Administrative Procedure Act, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C.

§ 1361, to compel Defendants—various departments and officers of the United States—to

adjudicate the immigrant visa application of his wife, Afsheen Arif, who currently lives in

Pakistan.  Dkt. 1 (Compl.).  Plaintiff argues that Defendants have unreasonably delayed

adjudicating his wife's application and have thereby violated the APA, 5 U.S.C. § 555(b), and

the Due Process Clause of the Fifth Amendment.  Defendants have moved to dismiss the case for

failure to state a claim.  Dkt. 7.  For the reasons that follow, the Court will **GRANT** in part and

**DENY** in part without prejudice Defendants' motion.

### I. BACKGROUND

The following factual allegations are taken from Plaintiff's complaint, which the Court

accepts as true for the purposes of Defendants' motion to dismiss.  *See Harris v. D.C. Water &*

*Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015).

On September 21, 2018, Suhail Taj, a lawful permanent resident of the United States, submitted a Form I-130 (an Alien Relative Petition) to U.S. Citizenship and Immigration Services ("UCSIS") on behalf of his wife, Afsheen Arif, who is a Pakistani citizen. Dkt. 1 at 3–4 (Compl. ¶¶ 12–13). USCIS approved Plaintiff's visa petition in December 2019 and forwarded it to the National Visa Center ("NVC"), a component of the State Department, for additional processing. *Id.* at 4 (Compl. ¶¶ 15–16). The NVC assigned a case number to the petition, but has not, to date, called Ms. Arif to the U.S. Embassy in Islabamad for an interview. *Id.* (Compl. ¶¶ 16–17). In the intervening years, Plaintiff has made several inquiries with the consulate, to no avail. *Id.* (Compl. ¶ 18).

Plaintiff commenced this action on April 19, 2022, naming the State Department, the Secretary of State, the U.S. Embassy in Islamabad, and the Chargé D'Affaires of the United States at the U.S. Embassy in Islamabad as Defendants. Dkt. 1 (Compl.). Plaintiff alleges that Defendants' "refus[al] to adjudicate Plaintiff's application and to issue the requested visa" violates Defendants' "non-discretionary duty to conclude agency matters" under Section 555(b) of the Administrative Procedure Act, *id.* at 4–5 (Compl. ¶¶ 20–22), and violates his Fifth Amendment right to "fundamental fairness in administrative adjudication," *id.* at 6 (Compl. ¶ 35). Moreover, although Plaintiff does not name the Department of Homeland Security ("DHS") as a Defendant in the suit, he asserts that Defendants are intentionally delaying his wife's visa application pursuant to a DHS policy known as the "Controlled Application Review and Resolution Program" (or "CARRP"), *id.* at 5–6 (Compl. ¶¶ 24–29), which he contends "delays the applications of applicants" from Muslim-majority countries or regions "due to security concerns," *id.* at 5 (Compl. ¶ 24). Plaintiff, accordingly, also requests that this Court "[e]nter a judgment declaring that [] CARRP violates the INA" and that "Defendants violated the

APA by adopting CARRP without promulgating a rule and following the process for notice and comment." *Id.* at 7 (Compl.).

On July 7, 2022, Defendants moved to dismiss Plaintiff's complaint for failure to state a claim and for lack of jurisdiction.  Dkt. 7.  They assert that "any delay here is not unreasonable as a matter of law," Dkt. 7 at 5, and that Plaintiff has failed to allege either a procedural or substantive due process violation, *id.* at 15.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Because "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted), they have "an affirmative obligation to consider whether the constitutional and statutory authority exist for [them] to hear each dispute" brought before them, *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quotation marks omitted).  If the "court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

A challenge to the Court's jurisdiction "may take one of two forms."  *Hale v. United States*, No. 13-cv-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015).  First, a Rule 12(b)(1) motion "may raise a 'facial' challenge to the Court's jurisdiction, which contests the legal sufficiency of the jurisdictional allegations contained in the complaint."  *Id.*  In this posture, the Court must accept the factual allegations of the complaint as true and construe them in the light most favorable to the non-moving party.  *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (collecting cases).  "Alternatively, a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction."  *Hale*, 2015 WL 7760161, at *3.  When a motion to

dismiss is framed in this manner, the Court "may not deny the motion . . . merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).  The Court "has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," so long as it "afford[s] the nonmoving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks omitted).

**B.      Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6).  In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)).  The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks omitted).  In deciding a Rule 12(b)(6) motion, the Court may consider only "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006),

along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

## III.  ANALYSIS

### A.    Unreasonable Delay

Although the government styles its motion to dismiss as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) *and* for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), Dkt. 7 at 1, neither the government's opening brief nor its reply identify which, if any, argument in favor of dismissal is jurisdictional in nature.  Rather, the argument section of the government's opening brief addresses only whether the delay here is unreasonable "[o]n the [m]erits," Dkt. 7 at 5, and whether "Plaintiff's due process argument lacks merit," *id.* at 15. Notwithstanding the government's framing, this Court has "an independent obligation to determine whether subject-matter jurisdiction exists."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  Moreover, in the context of mandamus actions specifically,[1] the D.C. Circuit has

---

[1] The Court notes that, for purposes of the unreasonable-delay claim, it considers Plaintiff's APA and Mandamus Act claims together.  "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'"  *In re Core Commc'n's, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomm. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)); *see also Vietnam Veterans of Am. v. Shineski*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) ("[T]he standards for obtaining relief" under the Mandamus Act and the APA are "essentially the same.").  The question of whether the Court has the "power[] to grant mandamus"—which rides most centrally on whether "the petitioner [has] . . . establish[ed] that the agency has violated 'a crystal-clear legal duty,'" *In re Ctr. for Biological Diversity & Ctr. for Food Safety*, --- F.4th ---, 2022 WL 17096919, at *3 (D.C. Cir. Nov. 22, 2022) (quoting *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022))—is therefore equally relevant in assessing Plaintiff's APA and Mandamus Act claims.  Even if it were possible to bring a claim for declaratory relief that does not implicate the same demanding hurdles applicable to the mandamus petition—a question on which the Court expresses no view—here, the only APA claim that Plaintiff brings with respect to Defendants' conduct, *see infra* n.3, sounds in mandamus.  *See* Dkt. 1 at 7–8 (Compl.).

cautioned district courts that "the distinction between the jurisdictional inquiry and the equitable merits inquiry"—*i.e.*, the difference between whether mandamus "*could*" issue and "whether mandamus *should* issue,"—is an important one. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 190 (D.C. Cir. 2016). The Court begins, therefore, with the question of jurisdiction.

To establish mandamus jurisdiction, "plaintiff[] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id.* at 189. "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Id.* In *American Hospital Ass'n v. Burwell*, 812 F.3d 183 (D.C. Cir. 2016), the D.C. Circuit for the first time "squarely addressed the interplay of the three threshold mandamus requirements" with another set of factors that has guided this Court's assessment of whether mandamus should issue—the "*TRAC* factors." *Id.* Those six *TRAC* factors, which traditionally guide the Court's consideration of "whether [an] agency's delay is so egregious as to warrant mandamus," *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks omitted), are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable where human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecommunications Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (internal quotation marks and citations omitted). The Court explained in *American Hospital Association* how these factors interact with the threshold jurisdictional inquiry:

> Because the[] [*TRAC*] factors function not as a hard and fast set of required elements, but rather as useful guidance [as to whether mandamus is warranted], their roles may differ depending on the circumstances.  For example, in situations where plaintiffs allege that agency delay is unreasonable despite the absence of a specific statutory deadline, the entire *TRAC* factor analysis may go to the threshold jurisdictional question: does the agency's delay violate a clear duty?  By contrast, in situations where the statute imposes a deadline or other clear duty to act, the bulk of the *TRAC* factor analysis may go to the equitable question of whether mandamus *should* issue, rather than the jurisdictional question of whether it *could*.

*Am. Hosp. Ass'n*, 812 F.3d at 189–90.

Notwithstanding the D.C. Circuit's admonition that "the distinction between the jurisdictional inquiry and the equitable merits inquiry matters," neither party addresses the threshold question of whether, in this case, the agency's delay violates any "clear duty to act;" nor do they address the extent to which the *TRAC* factor analysis "go[es] to [that] threshold jurisdictional question." *Id.* at 190.[2]  Most crucially, Plaintiff, who "bear[s] the burden of establishing jurisdiction . . . on the face of the complaint," *Tavoulareas v. Comnas*, 720 F.2d 192, 195 (D.C. Cir. 1983), has alleged neither "a clear and indisputable right to relief" nor the "violat[ion] [of] a clear duty to act," *see Am. Hosp. Ass'n*, 812 F.3d at 189, beyond the sweeping allegation that "Section 555(b) [of the APA] creates a non-discretionary duty to conclude agency matters," Dkt. 1 at 4 (Compl. ¶ 20).  Rather than even attempting to identify a clear duty to schedule a visa interview under the circumstances presented here, Plaintiff cites a Seventh Circuit case for the proposition that "the question of whether a statute impose[s] a 'duty' on the

---

[2] Whether the *TRAC*-factor analysis speaks to jurisdiction or to the merits not only "affects [the D.C. Circuit's] standard of review," as the Court explained in *American Hospital Association*, 812 F.3d at 190, but also informs this Court's resolution of the relevant factual disputes, including whether the Court may "assum[e] the truth of the facts alleged by the plaintiff" or must, in resolving a "factual" challenge to the Court's jurisdiction, "go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc.*, 216 F.3d at 40.

government for purposes of mandamus relief [is] not a jurisdictional [one]." Dkt. 8 at 6 (citing *Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 386–87 (7th Cir. 2003)). But the D.C. Circuit has expressly rejected that very proposition; it has, instead, admonished that "[a]bsent a violation of a clear duty, th[e] court is *powerless* to grant mandamus." *In re Ctr. for Biological Diversity & Ctr. for Food Safety*, --- F.4th ---, No. 21-cv-1270, 2022 WL 17096919, at *3 (D.C. Cir. Nov. 22, 2022) (emphasis added).

Based on the information presently before the Court, the Court is skeptical that Plaintiff can establish the requisite "violation of a clear duty" in the present controversy. *Id.* Decisions of this Court that have considered mandamus petitions in the diversity-visa context have cast doubt on the notion that 8 U.S.C. § 1202(b)—which provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer," *id.*—creates, when read in its statutory context, a nondiscretionary duty to interview a visa applicant. *See, e.g.*, *Babamuradova v. Blinken*, --- F. Supp. 3d ---, No. 22-cv-1460, 2022 WL 4479801, at *8 (D.D.C. Sept. 27, 2022); *Zarei v. Blinken*, No. 21-cv-2102, 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021). The idea that § 1202(b) creates a nondiscretionary duty to adjudicate Plaintiff's visa is especially tenuous where, as here, the applicant has not yet appeared for an interview, given that the relevant regulations consider an applicant to have actually "ma[d]e or file[d] a[] [visa] application" only when she "personally appear[s] before a consular officer" for an interview. 22 C.F.R. § 40.1(l)(2). But even if Defendants do have a "clear duty" to adjudicate Arif's visa application, the Court must still consider whether, in this context, "the entire *TRAC* factor analysis . . . go[es] to the threshold jurisdictional question." *Am. Hosp. Ass'n*, 812 F.3d at 189. Neither Plaintiff nor the government, however, have addressed that question in their briefs.

Notwithstanding the Court's doubts as whether Plaintiff has carried his burden of establishing the prerequisite "clear duty to act" and a "clear and indisputable right to relief," *id.*, the Court will not resolve the jurisdictional question without the benefit of briefing by the parties.  The Court requires, at a minimum, that the parties address any clear duties created by the relevant statutory and regulatory regime and that they explain how—in light of *American Hospital Association*, 812 F.3d 183—the *TRAC*-factor analysis fits into the Court's threshold jurisdictional inquiry.  The Court will, accordingly, deny the government's motion to dismiss Count One "[o]n the [m]erits," Dkt. 7 at 6, as premature.  That denial will be without prejudice, however, to allow the government the opportunity to refile a motion to dismiss that addresses the threshold jurisdictional questions.

**B.     Due Process**

Defendants also move to dismiss Count Two of Plaintiff's complaint—which asserts that Defendants' delay in adjudicating Plaintiff's visa application violates his Fifth Amendment right to due process—for failure to state a claim.  Dkt. 7 at 15; *see* Dkt. 1 at 6–7 (Compl. ¶¶ 34–37).  Although Plaintiff's complaint is not the picture of clarity, he appears to raise both a procedural and substantive due process claim: Plaintiff alleges that Defendants' "combined delay and failure to act" violates both his "right to fundamental fairness in administrative adjudication," Dkt. 1 at 6–7 (Compl. ¶¶ 35–36), and has deprived him of "consortium between Plaintiff and Afsheen Arif," *id.* at 7 (Compl. ¶ 37).  Neither claim survives the motion to dismiss.

The Constitution safeguards two varieties of due process rights.  "To violate substantive due process, governmental action must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Ramsingh v. Transp. Sec. Admin.*, 40 F.4th 625, 637 (D.C. Cir. 2022) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  But

"[n]ot every unfortunate or regrettable event amounts to a substantive due process violation," *id.*—to succeed on a substantive-due-process claim, a plaintiff must prove "egregious government misconduct" that deprives him of a liberty or property interest, *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003); *see also Meyou v. U.S. Dep't of State*, No. 21-cv-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022). "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). "[B]oth types of due process violations," accordingly, "require . . . an allegation that the plaintiff has been deprived of a fundamental right or liberty or property interest." *Meyou*, 2022 WL 1556344, at *5 (omission in original) (internal quotation marks omitted); *see also George Wash. Univ.*, 318 F.3d at 206 ("Although th[e] doctrine [of substantive due process] normally imposes only very slight burdens on the government to justify its actions, it imposes none at all in the absence of a liberty or property interest."); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every [procedural] due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'").

Plaintiff's claims flounder at this threshold hurdle. "[G]enerally, there is no property right in an immigrant visa," *Mahmood v. U.S Dep't of Homeland Sec.*, No. 21-cv-1262, 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021) (internal quotation marks omitted), and noncitizens typically do not have a "constitutionally[] protected interest in the procedures by which . . . visas are obtained," *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011). *See also Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020) (explaining that noncitizens at the threshold of entry "ha[ve] only those rights regarding admission that Congress has provided by statute").

10

Nor can Plaintiff establish a constitutionally protected property or liberty interest in marital consortium or family unity. *See* Dkt. 1 at 7 (Compl. ¶ 37); Dkt. 8 at 13. Although the Due Process Clause "protects an individual's right to marry and the marital relationship," *Singh v. Tillerson*, 271 F. Supp. 3d 64, 71 (D.D.C. 2017), the D.C. Circuit has concluded that a U.S. citizen's marital liberty interest is not impaired where deporting a non-citizen spouse would "put burdens upon the marriage" but "would not . . . destroy the legal union which the marriage created." *Swartz v. Rogers*, 254 F.2d 338, 339 (D.C. Cir. 1958); *see Manzoor v. U.S. Citizenship & Imm. Servs.*, No. 21-cv-2126, 2022 WL 1316427, at *7 (D.D.C. May 3, 2022) ("Were the Defendants prohibiting Plaintiff from marrying his spouse, that would be another case. But where, as here, the government is enforcing a duly enacted statute concerning immigration, Plaintiff needs to demonstrate that he has a protected fundamental liberty interest to have his spouse's visa application approved at a quicker pace."). Applying *Swartz*, a number of decisions of this Court have concluded that there is no fundamental liberty interest implicated in the delayed adjudication or denial of a spouse's visa application. *See, e.g.*, *Mahmood*, 2021 WL 5998385, at *9–10; *Dean v. U.S. Dep't of Homeland Sec.*, No. 21-cv-2002, 2022 WL 2785967, at *8 (D.D.C. July 15, 2022); *Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 133 (D.D.C. 2019) (concluding that "this Court is bound by circuit precedent" on this question). These decisions comport with a plurality decision of the Supreme Court, which concluded that the denial of a spouse's visa application does not deprive an individual of "life, liberty, or property" protected by the Due Process Clause. *Kerry v. Din*, 576 U.S. 86, 94 (2015) (plurality opinion); *cf. id.* at 102 (Kennedy, J., concurring) (declining to reach the question of "whether Din has a protected liberty interest").

In support of his due-process claim, Plaintiff invokes Ninth Circuit caselaw establishing that "the denial of a visa implicates the constitutional rights of American citizens" because a U.S. citizen "has a protected liberty interest in her marriage that gives rise to a right to constitutionally adequate procedures in the adjudication of her husband's visa application." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quoting *Bustamante v. Mukasey*, 531 F.3d 1059, 1061–62 (9th Cir. 2008)); *cf. Khachatryan v. Blinken*, 4 F.4th 841, 856 (9th Cir. 2021) (declining to extend *Ching*'s holding to a parent-child relationship and noting that the decision did not consider "whether there is a relevant cognizable liberty interest in the visa application of any family member other than a *spouse*"). But, "[g]iven *Swartz*, that is not the law in this Circuit." *Mahmood*, 2021 WL 5998385, at *10 (quoting *Rohrbaugh*, 394 F. Supp. 3d at 134 n.4). "Bound by circuit precedent," and in light of Plaintiff's failure to establish any protected liberty or property interest, the Court will dismiss Plaintiff's due-process claim. *Id.* (quoting same).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' motion to dismiss, Dkt. 7, is **GRANTED** in part as to Plaintiff's due-process claim and **DENIED** in part without prejudice as to Plaintiff's unreasonable-delay claim;[3] it is further

**ORDERED** that the parties shall, on or before January 6, 2023, file a joint status report with the Court proposing a schedule for further briefing on the jurisdictional questions relevant to Count One of Plaintiff's complaint.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 28, 2022

---

[3] Although Plaintiff also asks the Court to invalidate DHS's "Controlled Application Review and Resolution Program" ("CARRP"), Dkt. 1 at 7 (Compl.), DHS is not a party to this suit and there is, accordingly, no basis for the Court to review the CARRP policy on these facts.  *Cf. Dean v. U.S. Dep't of Homeland Sec.*, No. 21-cv-2002, 2022 WL 2785967, at *9 (D.D.C. July 15, 2022) (dismissing the plaintiff's CARRP claims after the DHS defendants had been dismissed from the suit).